ROBERTA L. STEELE, SBN 188198 (CA)
MARCIA L. MITCHELL, SBN 18122 (WA)
RAYMOND T. CHEUNG SBN 176086 (CA)
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
San Francisco District Office
450 Golden Gate Ave., 5th Floor West
P.O. Box 36025
San Francisco, CA  94102
Telephone No. (650) 684-0936
Fax No. (415) 522-3425
raymond.cheung@eeoc.gov

*Attorneys for Plaintiff EEOC*

MICHAEL D. WILSON, JR., CA Bar No. 233334
michael.wilson@ogletree.com
WILFRED N. GUAL, CA Bar No. 340571
wilfred.gual@ogletree.com
KHADIJAH O. KENYATTÉ, CA Bar No. 337236
khadijah.kenyatte@ ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone:     415-442-4810
Facsimile:     415-442-4870

Attorneys for Defendant
HCL AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | Case No.:  5:24-cv-04694-PCP |
|---|---|
| Plaintiff, | **AMENDED STIPULATED ELECTRONICALLY STORED INFORMATION (ESI) PROTOCOL** |
| vs. | |
| HCL AMERICA, INC., | Re:  Dkt. No. 37 |
| Defendant. | MODIFIED BY THE COURT |

///

///

1    Pursuant to Case Management Order, (ECF 24), Plaintiff U.S. Equal Employment

2    Opportunity Commission (EEOC) and Defendant HCL America, Inc. (HCL), (collectively, the

3    parties), hereby submit the following Stipulated Order and Proposed Protocol Regarding Discovery

4    Plan and Electronically Stored Information.

5    **I.    PURPOSE**

6    This Order will govern the parties' pre-mediation discovery and the discovery of

7    electronically stored information (ESI) in this case as a supplement to the Federal Rules of Civil

8    Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any

9    other applicable orders and rules.

10    **II.    COOPERATION**

11    The parties are aware of the importance the Court places on cooperation and commit to

12    cooperate in good faith throughout the matter consistent with this Court's Guidelines for the

13    Discovery of ESI. The parties' cooperation includes propounding reasonably particular discovery

14    requests, identifying appropriate limits to eDiscovery, including limits on custodians, identifying

15    relevant and discoverable ESI, and other parameters to limit and guide preservation and eDiscovery

16    issues. The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify,

17    and produce relevant and discoverable information consistent with Fed. R. Civ. P.  26(b)(1).

18    **III.    LIAISON**

19    The parties have identified liaisons to each other who are and will be knowledgeable about

20    and responsible for discussing their respective ESI.  Plaintiff identified EEOC Assistant General

21    Counsel for Technology Maria Salacuse as its ESI liaison and Defendant HCL identified Ogletree

22    Deakins' employee Tanya Glaser as its ESI liaison.  Each e-discovery liaison will be or will have

23    access to those who are knowledgeable about the technical aspects of e-discovery, including the

24    location, nature, accessibility, format, collection, search methodologies, and production of ESI in

25    this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve

26    disputes without court intervention.

27    **IV.    PRESERVATION**

28    The parties have discussed their preservation obligations and needs and agree that

preservation of potentially relevant ESI will be reasonable and proportionate. Although this Protocol envisions the use of electronic search methodologies, *see infra*, to search for and collect potentially responsive documents, where a party knows or reasonably should know that information is relevant and responsive to a document request, it shall not withhold that document from production on the basis that its electronic search methodology did not otherwise identify the document. Unless specifically stated, nothing in this stipulation is intended to abrogate or alter the parties' obligations with respect to preserving ESI.

1.    **Relevant ESI Sources**. The parties have identified in Attachment 2 (Relevant ESI Sources) the Email, User-Created Files, and Database Systems that they reasonably believe to contain relevant information during the Temporal Scope of Preservation (*see* below). To the extent that the parties identify additional systems for preservation and potential production, or if upon further investigation, revision to the existing system descriptions is necessary, the parties agree to negotiate an update to this protocol to include the additional systems and/or revise existing system descriptions. ~~This section is currently the subject of a discovery dispute between the parties that is before Magistrate Judge DeMarchi, and may be revised, if necessary, in accordance with the ruling from the Court.~~

2.    **Date Range for Preservation of ESI**. The parties agree that the relevant date range for the preservation of ESI begins on January 1, 2021, and continues through the date of judgment or settlement. The parties shall take reasonable steps to preserve relevant ESI created or modified within the Date Range for Preservation of ESI that is within their possession, custody, or control. The Court may alter the Date Range for Preservation of ESI in response to motion or inherent authority.

3.    **Custodians**. The parties have identified in Attachment 3 some of the ESI sources they believe should be preserved and some ESI custodians, for whom they currently believe ESI should be preserved. The parties shall add or remove sources and custodians as reasonably necessary. In responding to discovery requests, the producing party shall also identify the specific custodial accounts and ESI sources searched. ~~This section is currently the subject of a discovery dispute between the parties that is before Magistrate Judge DeMarchi, and may be revised, if~~

1    ~~necessary, in accordance with the ruling from the Court.~~

2        **4.**     **Reasonably Inaccessible Data.**  The parties must identify what their respective ESI

3    sources were operating during the relevant time period and which, if any, they claim they cannot

4    access at this time.  If a party declines to collect or search what it reasonably believes to be sources

5    of unique, potentially responsive ESI on the bases that the materials are not reasonably accessible,

6    that party must identify by category, data type, and general description the potentially responsive

7    ESI that it is not collecting or searching and an explanation as to why the ESI is not reasonably

8    accessible. Where a party seeks collection and searching of information from media sources

9    designated by another party as "not reasonably accessible," the parties will meet and confer in an

10   effort to resolve any disagreements before seeking relief from the Court.

11       The parties agree that the following ESI is not reasonably accessible:

12           (a)     Deleted, shadowed, fragmented, residual, or cached data, temporary files,

13       random access memory ("RAM"), or ESI that would only be accessible by taking a forensic

14       (bit stream) image of a device; and

15           (b)     Back up tapes or other storage media used for disaster recovery purposes

16       where the data on the tapes is duplicative of data stored elsewhere and is being preserved by

17       the party.

18       Additional data sources may be identified as a result of investigation, and the parties shall

19   promptly identify any additional data sources that they believe are not reasonably accessible. The

20   parties will meet and confer about ESI they assert are reasonably inaccessible as additional data

21   sources are identified. However, nothing herein shall prevent a party from subsequently requesting

22   that ESI a party deems "reasonably inaccessible" be produced if facts demonstrate a particular need

23   for such evidence that justifies the burden of preservation and retrieval. Further, nothing herein shall

24   prevent a party from requesting and receiving additional detail and explanation from the producing

25   party regarding any of the items it claims are reasonably inaccessible to allow the requesting party to

26   further evaluate the substance of the evidence and the burden and costs of retrieving and providing

27   this evidence.

28

**V.    SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer as needed about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

A.    **The Use of Search Terms on Unstructured Data.** If the producing party determines the use of search terms is necessary and appropriate to search and collect relevant and/or responsive ESI, the parties shall collaborate and cooperate in good faith and attempt to exhaust all efforts to reach an agreement on a set(s) of search terms to be used.

1.    Within 20 days of receiving the relevant set of discovery requests, the producing party shall develop and share with the requesting party a list of proposed search terms, including (1) overall number of documents in the document collection against which the search was conducted; (2) the "hit count" of the raw number of documents identified per search term; (3) the total number of unique documents with hits across all search terms and documents within families containing such unique documents (i.e., the review universe if all terms were to be accepted and reviewed). For any complex Boolean search strings, the report will provide information both for the search string as a whole as well as each individual component of the Boolean search string to help counsel analyze the effectiveness of search terms.

At the same time, if the producing party is using a tool other than Relativity, the producing party shall also provide information to the requesting party regarding the syntax and search capabilities and limitations of its ESI tool with respect to search terms (e.g., ordering of search terms and parentheses, what wildcard options are available, stemming capabilities, noise words, Boolean capabilities, etc.) sufficient for the requesting party to understand the search terms proposed and to offer counterproposals to them. The producing party shall provide, concurrently with the Report, sufficient information for the requesting party to propose refined search terms, such as identifying any groups of nonrelevant emails upon which the search terms are hitting. The parties agree that the process will collaborative and iterative.

2.    The requesting party shall provide any revisions or additions to the producing party's proposed search terms (counterproposals), if any, within a reasonable time after receipt of proposed

1    search terms from the producing party.

2         3.      After receipt of the first set of revisions or additions from the requesting party (as set

3    forth above), and within a reasonable period after receipt of the counterproposals (to be agreed upon

4    by the parties) or receipt of any revisions in subsequent comments rounds, if applicable, but no

5    longer than 7 days thereafter, the producing party will identify which of the requesting party's

6    proposed search terms the producing party agrees to use, and which terms it rejects, and shall

7    propose alternatives, if any, to counterproposals to which it objects. The producing party shall at the

8    same time supply a Search Terms Hit Report (STH Report), as described in subsection (5) below, for

9    all search terms that were accepted, rejected, and all proposed alternatives. Upon request, the

10   producing party shall confer with the requesting party concerning the producing party's reasoning

11   behind why particular search terms are not acceptable and possible alternative search terms.

12        4.      The parties shall reasonably repeat the process in subsections (2) and (3) in good faith

13   to come to a final agreement regarding search terms. The parties will meet and confer regarding

14   disputed search terms and STH Reports as needed. The parties shall meet and confer to attempt to

15   develop a mutually agreeable means of evaluating the effectiveness of disputed search terms in

16   identifying responsive documents, such as a responsiveness review of a statistically significant

17   random sample of the documents hit by a disputed term. Unless otherwise stipulated by the parties or

18   ordered by the court, the producing party shall produce responsive ESI within 30 days after

19   supplying the initial STH Report.

20        5.      **STH Report**: STH Reports will be provided in Excel (or other format as agreed to by

21   the parties). An STH Report should: (a) exclude from the number of hits any duplicates; (b) provide

22   the number of documents hit by the search term, including family members; and (c) the number of

23   unique documents hit by each search term (i.e., the number of documents hit by that search string

24   and no others, and not previously produced in this litigation).

25        6.      **Validation**: Once the parties have agreed to a list of search terms subject to the

26   process outlined above, the parties shall meet and confer to attempt to develop a mutually agreed

27   methodology to determine effectiveness of search terms in identifying responsive documents. The

28   parties shall meet and confer regarding whether further modification to the final set of search terms

is necessary.

7.    The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.

8.    If after finalization of search terms or other parameters a party determines in good faith that additional search terms or parameters are necessary to identify responsive information or determines that modifications to search terms or other parameters are necessary to avoid disproportionate or undue burden and expense associated with the review and production of the results of those search terms, counsel will meet and confer in an effort to agree on additional or modified terms after an initial production.

**B.    Structured Database Systems**

To the extent a response to discovery requires the search and collection of discoverable ESI contained in a structured database system, the parties shall meet and confer in an attempt to agree upon a set of reasonable queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the requesting party.

**C.    Custodial Mobile Device and Social Media Data**

For custodians identified in Attachment 3 and employed by either party, or ordered by the Court, a producing party will take reasonable steps to identify whether any unique, responsive, discoverable communications are located on any mobile device or social media accounts in the "possession, custody, or control" (as defined under the Federal Rules and case law) of the producing party. The producing party is obligated to disclose if it takes the position that a custodian possesses a mobile device or social media account that was used for work purposes is not within the producing party's possession, custody or control. The producing party shall provide an explanation and support for its position that a mobile device is not within the producing party's possession, custody, or control.

**VI.    PROCESSING, FILTERING AND REVIEW**

The processing and review of Unstructured ESI may consist of any of the following processes selected by the producing party: (1) loading of ESI into a review platform; (2) the

1   application of file type, date, and other metadata filters; (3) the use of search terms, as outlined *infra*

2   in Section VI(A); (4) the use of analytics technologies, including email threading, clustering,

3   filtering, categorization, and technology assisted review/ predictive coding, as outlined *infra* in

4   Sections VI(C)-(E); and (5) attorney review for responsiveness.

5       Parties will review the results of the above efforts for privilege or other protection from

6   disclosure and all responsive, non-privileged ESI shall be produced in the format described below in

7   Section VII.

8       A.    **The Use of Search Terms on Unstructured ESI to Filter and Review**

9       If the producing party finds it appropriate to apply search terms to cull the collected ESI

10  before review, the parties shall follow the process outlined in Section V(A), *supra*.

11      B.    **Email Domain Exclusions**

12      Producing parties may utilize an ESI search process to identify categories of documents,

13  such as emails from domains typically associated with junk email, such as retailer advertising, and

14  newsletters or alerts from non-industry sources.

15      C.    **Email Domain Exclusions**

16      Absent compelling circumstances and upon notice by a requesting party to a producing

17  party, any message, attachment or other electronically stored information that has been identified by

18  a spam or virus filter shall be treated as per se non-responsive and a party shall not be required to

19  preserve, review, or produce such ESI.

20      D.    **Technology Assisted Review/Predictive Coding.**

21      The parties also recognize the availability of a variety of search tools and methodologies,

22  including but not limited to Technology Assisted Review (TAR). If the producing party intends to

23  use TAR or similar advanced analytics as a substitute for attorney responsiveness review, the parties

24  agree to meet and confer in good faith to attempt to reach agreement about the technology and

25  process that a producing party proposes to use to identify responsive ESI and a statistically sound

26  methodology to determine the recall rate and other measures of the effectiveness of the tool and

27  processes in identifying responsive documents. The producing party shall make disclosures

28  regarding its tools and processes necessary to make the meet and confers meaningful and for the

1  requesting party to negotiate on an informed basis.

2      If, prior to commencement of negotiations over search terms, a producing party intends, or is

3  likely, to use both search terms and TAR (or similar advanced analytics), it shall notify the

4  requesting party prior to commencement of search term negotiations. If a producing party decides to

5  employ TAR or similar advanced analytics during, or after the conclusion of, negotiations over

6  search terms, it shall promptly notify the requesting party before commencing any review. Under

7  either of these circumstances, the parties shall meet and confer regarding the use of search terms

8  prior to application of TAR is appropriate, and if so, how, to what extent, and under what conditions

9  search terms may be applied.

10      **E.     Email Threading**

11      The parties may utilize email threading technology in their review to thread email messages

12  where the content of those messages, and any attachments, are wholly contained within a later email

13  message in the thread (Inclusive Emails).

14  **VII.   PRODUCTION FORMATS**

15      The parties agree to the format for production as described herein as well as Exhibit A.

16      **A.     Paper Documents**

17      Hard copy documents shall be scanned to single-page TIFF Group IV format (300 DPI

18  resolution) with corresponding searchable OCR text and be logically unitized. The file name for the

19  TIFF image shall be the Bates/PageID Number. Scanned documents shall also be converted into

20  searchable text using optical character recognition (OCR), extracted, and saved as a text file named

21  with the Bates/PageID Number. The OCR shall include the Bates/PageID number for each page. The

22  load file shall include a field for the OCR/Text file path.

23      **B.     Email and User-Created Files**

24      The parties will produce documents in accordance with the specifications identified in this

25  section. ESI will generally be produced in single-page TIFF format (300 DPI resolution) with

26  corresponding document-level extracted text and a delimited DAT file containing the metadata fields

27  outlined in Exhibit A.

28      9.     All spreadsheet and presentation files (e.g., Excel, PowerPoint) shall be produced in

native format with an associated placeholder image, and a native file path contained in the DAT file to the native file.

10.    All hidden text (e.g., track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file.

11.    All embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file—excepting automatically generated signature graphics and logos to the extent they can be isolated and excluded—shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

12.    The parties agree to take reasonable steps based on industry standards to open password-protected or encrypted files, including using commercially accessible software as well as requesting passwords from those individuals which the Parties represent. If there are potentially responsive encrypted or password protected documents, which the producing party has been unable to, after reasonable efforts, to locate the password or decrypt, the parties shall meet and confer. If a party believes that removing password protection is unduly burdensome, the parties shall meet and confer.

13.    The producing party shall disclose any substantive gaps, errors, or exceptions in the collected or processed ESI.

C.    **Family Relationships and Modern Attachments**

Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. The parties agree that if any part of a Document or its attachments is responsive, the entire Document and attachments will be produced as responsive, except any attachments that must be withheld or redacted and logged based on privilege. Withheld documents should be replaced with slip sheets.

The producing party shall use best efforts to produce hyperlinked documents and "Modern attachments" contained within emails or other Unstructured Data in a reasonably usable form that

will identify the connection between the "parent" message (the originating message containing the modern attachment) and the modern attachment, to the extent the producing party's internal systems reasonably allow for automated collection and identification of such Modern attachments. The producing party shall meet and confer with the requesting party to discuss proposed formats of production for modern attachments. To the extent that a unique modern attachments points to a drive, folder, or other ESI that is not an individual file, parties shall meet and confer to discuss production.

D. **Short Messages**

Short Messages, including text, Microsoft Teams, WhatsApp, and Slack messages, if any, shall be produced in a searchable format that preserves the presentational features of the original messages, such as emojis, images, video files, animations, and the like. In general, Short Messages should be rolled up into 24-hour chunks and produced as TIFFs with searchable text. If a party needs more than a 24-hour chunk of data to be produced for the purpose of determining context, the parties will meet and confer within 3 business days of either party requesting to meet.

E. **Custodial Mobile Device Data**

Prior to any production of responsive data from mobile devices of custodians, i.e., party employees, the producing party shall discuss the potential export formats and the method and tool used for extraction.

F. **Redacted Documents**

Documents that contain redactions, including any associated family members, will be produced in single-page TIFF format (300 DPI resolution) with corresponding document-level extracted text and a delimited DAT file containing the metadata fields outlined in <u>Exhibit A</u> to the extent that such metadata fields are not part of the redaction. Documents produced with redactions shall identify in some manner (such as through highlighting in black or through the use of redaction boxes) the location and extent of redacted information. To the extent a party deems production of redacted TIFF images of Excel spreadsheets significantly degrades the usability of the document, the parties agree to meet and confer regarding alternate production methodologies of the redacted information.

G.   **Structured Database Systems**

The default form for production of database information is "fielded tables" where each row represents a database record and each column represents a single data field, such as a Microsoft Excel spreadsheet or delimited text file. The producing party will provide a description of the fields contained in their structured databases, including any codes used.  Upon review of the report, the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

**VIII.   PHASING**

The parties will meet and confer as may be necessary regarding additional phasing discovery.

**IX.   DOCUMENTS PROTECTED FROM DISCOVERY**

A.   **The following categories of documents need not be included on a privilege log:**

1.   Attorney work product:

a.   Documents created by HCL's counsel that post-date the filing of Kenny Batchu's Charge, No. 556-2021-00523, unless HCL may rely on such documents to support its defenses; and,

b.   Documents created by EEOC legal unit personnel that post-date the filing of Kenny Batchu's Charge, No. 556-2021-00523; unless EEOC may rely on such documents to support its claims.

2.   Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

3.   The parties agree to make their privilege and work product designations in good faith.

B.   **Privilege Logs**

The parties agree that any privilege logs required to be produced in accordance with Section F of the Court's Civil Standing Orders shall be due within 45 days after the underlying discovery responses are due, unless otherwise stipulated to or ordered by the Court. The log shall be produced in an electronic and easily searchable and manipulatable format (such as a CSV file).

**X.      ELECTRONIC SERVICE**

The parties stipulate to electronic service, namely that documents will be deemed timely served if they are emailed to the respective email lists (provided by each party) on the same date that the documents would otherwise be due.

**XI.      INADVERTENT PRODUCTION**

**(a)**      Pursuant to Federal Rules of Evidence 502(d) and (e), irrespective of the care taken by the Parties prior to production and factors provided in Federal Rule of Evidence 502(b), the inadvertent production of attorney-client privileged, work product protected, or otherwise privileged information or documents, including but not limited to ESI is not a waiver of the attorney-client privilege or work product doctrine protection or any other privilege. This protection against the waiver of privileges shall apply irrespective of the care taken by the Parties prior to production and factors provided in Federal Rules of Evidence 502(b) provided that the production is inadvertent. This provision shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d) and any other applicable law.

**(b)**      This ESI Protocol shall be interpreted to provide the maximum protection allowed by applicable law, specifically including but not limited to Federal Rule of Evidence 502(d), shall be enforceable and granted full faith and credit in all other state, territorial, and federal proceedings. In the event of any subsequent conflict of law, the law that is most protective of privilege and work product shall apply.

**(c)**      Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

**(d)**      If the Receiving Party has reason to believe that a produced document or other information may reasonably be subject to a claim of privilege, the Receiving Party shall immediately sequester the document or information, cease using the document or information and cease using any work product containing the information, and shall inform the Producing Party of the beginning BATES number of the document or, if no BATES number is available, shall otherwise inform the Producing Party of the information.

**(e)**    A Producing Party must give written notice to any Receiving Party asserting a claim of privilege, work-product protection, or other ground for reclaiming documents or information (a "Clawback Request") promptly after discovery. Upon receiving a Clawback Request, Receiving Party or Receiving Parties shall destroy promptly all copies of the documents or information referred to and notify the Producing Party or person that it has done so.

## XII.    MODIFICATION

This Stipulated Order may also be modified by another Stipulated Order of the parties or by the Court. If the parties are unable to agree, need further clarification on any issue relating to the preservation, collection, or production of electronically stored information, or seek modification of this Order, the parties agree to promptly pursue informal discovery dispute resolution procedures in accordance with Section F of the Court's Civil Standing Orders.

///
///
///
///
///
///
///
///
///

1    **IT IS SO STIPULATED**, through Counsel of Record.

2    Dated: February 25, 2025

3

4    ROBERTA STEELE
     Regional Attorney

5    MARCIA L. MITCHELL
     Assistant Regional Trial Attorney

6

7    RAYMOND T. CHEUNG
     Senior Trial Attorney

8

9    By:   /s/ Raymond T. Cheung
              U.S. EQUAL EMPLOYMENT
10            OPPORTUNITY COMMISSION
              San Francisco District Office
11            450 Golden Gate Ave., 5th Floor West
              P.O. Box 36025
12            San Francisco, CA 94102
              Telephone (650) 684-0936
13            raymond.cheung@eeoc.gov

14

15                      *Attorneys for Plaintiff EEOC*

16

17   Dated: February 25, 2025

18   OGLETREE, DEAKINS, NASH,
     SMOAK & STEWART, P.C

19
     By:     /s/ Michael D. Wilson, Jr.
20            MICHAEL D. WILSON, JR.
              WILFRED N. GUAL
21            KHADIJAH O. KENYATTÉ

22                  *Attorneys for Defendant HCL America, Inc.*

23

     ///
24
     ///
25   PURSUANT TO STIPULATION, AS MODIFIED BY THE COURT, IT IS SO ORDERED.

26   Dated:  February 26, 2025

27   _____
     Virginia K. DeMarchi, United States Magistrate Judge
28

1

2

## <u>LOCAL RULE 5-1(i)(3) ATTESTATION</u>

3

4

    I, Raymond Cheung, am the ECF User whose ID and password are being used to file the Joint Case Management Conference Statement. In compliance with Local Rule 5-1(i)(3), I hereby attest that Defense Counsel concurs in this filing.

5

6

    Dated: February 25, 2025

7

                                           */s/ Raymond T. Cheung*
                                           Raymond T. Cheung, Senior Trial Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **FORM OF PRODUCTION / LOAD FILE SPECIFICATIONS**

A.      **Form of Production**

The parties agree to make all reasonable efforts to produce documents in accordance with the specifications identified in this document.  As set forth with greater particularity below, some ESI will be produced in native format, while PDF-format and hardcopy documents will be produced in single-page TIFF format (300 DPI resolution) with a delimited DAT file containing the metadata fields outlined in Attachment 1, accompanied by an Opticon (OPT) cross-reference file and corresponding document-level extracted text. Before making a production that does not conform to these specifications, the producing party shall meet and confer with the receiving party to explain why the production will not conform and explore alternative formats. The Commission uses the Relativity suite of e-Discovery software.

### **1.      Email and User-Created Files**

The parties agree to make all reasonable efforts to produce documents in accordance with the specifications identified in this section.

Email will be produced in single-page TIFF format (300 DPI resolution) with a delimited DAT file containing the metadata fields outlined in <u>Attachment 1,</u> accompanied by an Opticon (OPT) cross-reference file and corresponding document-level extracted text.

All spreadsheet and presentation files (e.g., Excel, PowerPoint) shall be produced in native format with an associated placeholder image.  All hidden text (e.g., track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved. Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production, to the extent practicable.

1

### 2.    Social Media

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, LinkedIn, internet-based email accounts, etc.), the producing party shall meet and confer with the receiving party regarding the potential export formats.

### 3.    Redacted Documents

Documents that contain redactions, including any associated family members, will be produced in single-page TIFF format (300 DPI resolution) with corresponding document-level extracted text and a delimited DAT file containing the metadata fields outlined in Attachment 1 to the extent that such metadata fields are not part of the redaction. To the extent a party deems production of redacted TIFF images of Excel spreadsheets significantly degrades the usability of the document, the parties agree to meet and confer regarding alternate production methodologies of the redacted information.

### 4.    Structured Data: Database Systems

Information from structured database systems shall be produced through existing report formats available in the associated applications, including but not limited to Microsoft Excel spreadsheet or delimited text format, if available.  If a receiving party believes that the format of a produced report is inadequate or does not fully respond to a discovery request, the parties agree to meet and confer regarding other methods to produce responsive information from the Database Systems.

### 5.    Paper Documents

Documents kept in paper format in the usual course of business shall be produced in scanned and logically unitized format. Scanning shall be to single-page, TIFF Group IV, 300 dots per inch (dpi). Each page shall include the Bates/PageID number at the bottom of the page. The file name for the TIFF image shall be the Bates/PageID Number. Scanned documents shall also be converted into searchable text using optical character recognition (OCR), extracted, and saved as a text file named with the Bates/PageID Number. The OCR shall include the Bates/PageID number for each page. The load file (see A.8 below) shall include a field for the OCR/Text file path.

### 6.    PDF Files

Documents kept in PDF format in the usual course of business shall be produced in logically unitized format. Such documents shall not be combined, merged, or otherwise joined if they are not so organized in the usual course of business. Files usually maintained in a different file type, but converted to PDF format and produced, will not be accepted.

### 7.    "Logically Unitized" Defined

"Logically unitized" means that all pages that belong together as a document, and only those pages, are produced as one document, with relationships such as parent and child attachments maintained. Documents that are bulk-scanned to non-unitized files will not be accepted.

### 8.    Load File

Each production shall be accompanied by a delimited-load file in .DAT format that establishes the proper document breaks and maintains the parent/child relationships (BegAttach and EndAttach). The load file shall use the delimiters identified below and include all applicable data for the fields identified in Attachment 1.

| Value | Character | ASCII Number |
|---|---|---|
| Column | ¶ | 020 |
| Quote | þ | 254 |
| Newline | ® | 174 |
| Multi-Value | ; | 059 |
| Nested Value | \ | 092 |

The load file should be accompanied by an Opticon (OPT) cross-reference file that references one Bates number per line.

### B.    Transmission and Delivery

### 1.    Volumes and Folders

Provide separate folders for images, text, and load files. Provide a Volume Number identifier for each production that is unique and runs in succession from the last volume

produced (e.g., VOL001, VOL002, VOL003).

### 2.    Acceptable Means of Delivery

Where possible, productions should be delivered by electronic means.  Productions may be delivered by file-sharing services such as Drop Box or Hightail by sending the download to the attorneys identified in the parties' electronic service lists. See ECF 50, p. 17. Productions greater than 40 MB or split into multiple emails whose collective size is greater than 40 MB, will not be accepted by email.

Where production by electronic means is not feasible, productions may be saved to external media (CD/DVD, USB drive, external HDD drive) and delivered by UPS or FedEx to the following address:

> US EEOC
> OGC\LMS\LitSupport
> Attn: Amanda Beckerink or Richard Van Nelson
> 131 M Street, NE
> 5th Floor
> Washington, D.C. 20507

Delivery by U.S. Postal Service is not sufficient, because USPS deliveries to the EEOC are subjected to X-RAY security scanning, which damages data stored on external media.

### 3.    Encryption

Productions may be encrypted using WinZip or PKWare. The Commission will not accept productions that require the installation of other applications to read the data or remove encryption.

**Attachment 1**

**METADATA FIELDS**

| Field name | Field Description | Field Type | Field Value |
|---|---|---|---|
| CUSTODIAN | Custodian(s)/Source(s) - format: Last, First or ABC Dept. | Text | 160 |
| AUTHOR | Creator of the document | Text | 500 |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 |
| PGCOUNT | Page Count | Number | 10 |
| GROUPID | Contains the Group Identifier for the family, in order to group e-mails with their attachments | Text | 60 |
| BEGATTACH | Start Bates number of parent document in attachment range | Text | 60 |
| ENDATTACH | End Bates number of last attachment in attachment range | Text | 60 |
| REDACTIONS | Identifies whether the document contains redactions. | Boolean | 10 |
| RECORD TYPE | Use the following choices: E-Mail, E-File, Attachment, and Calendar Item. | Text | 60 |
| FROM | Author - format: Last name, First name | Text | 160 |
| TO | Recipient- format: Last name, First name | Text – semicolon delimited | Unlimited |
| CC | Carbon Copy Recipients - format: Last name, First name | Text – semicolon delimited | Unlimited |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name | Text – semicolon delimited | Unlimited |
| SUBJECT | Subject/Document Title | Text | Unlimited |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited |
| DATE TIME SENT | Date Sent (Use Time Zone of Collection Locality) | Date and Time | MM/DD/YYYY HH:MM:SS |
| DATE TIME CRTD | Date Created (Use Time Zone of Collection Locality) | Date and Time | MM/DD/YYYY HH:MM:SS |

| DATE TIME MOD | Date Last Modified (Use Time Zone of Collection Locality) | Date and Time | MM/DD/YYYY HH:MM:SS |
|---|---|---|---|
| DATE TIME ACCD | Date Accessed (Use Time Zone of Collection Locality) | Date and Time | MM/DD/YYYY HH:MM:SS |
| FILE SIZE | Native File Size in bytes | Number | 10 |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 |
| FILEPATH | Data's original source full folder path | Text | Unlimited |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited |
| FOLDER ID | Hard Copy container information (e.g., folder or binder name) | Text | Unlimited |
| MD5 HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Text | Unlimited |
| CONFIDENTIALITY | Documents designated as Confidential, as outlined in the parties' Stipulated Protective Order. | Text | Unlimited |
| PRIOR BATES BEG | Begin Bates numbers of document as previously produced in related *Vaughn* and *CRD* cases. | Text | Unlimited |

**Attachment 2**
# RELEVANT ESI SOURCES

I.    **Relevant Systems for the EEOC:**

    A.    **Unstructured Data**

        1.    **Email:**

           a.    **(a)** Kenny Batchu has utilized multiple email accounts during the relevant period, which are archived and can be exported.

           b.    **(b)** EEOC email is maintained on the EEOC's Microsoft Office 365 Enterprise System. EEOC migrated its GroupWise email system to Office 365 before 2019 and has used Office 365 at all times since. Emails are archived and can be exported.

        2.    **User-Created Files:** User created files are routinely kept in network server locations, including through EEOC's Microsoft Office 365 Enterprise System.

        3.    **Devices:**

           a.    Laptops: Kenny Batchu has utilized a laptop with cloud storage during the relevant period.

           b.    Cellular Phones: Kenny Batchu has utilized multiple iPhones during the relevant period.

    B.    **Structured Database Systems**

        1.    Charge file information and investigative documents are maintained in the EEOC's internal Agency Records System (ARC). The EEOC migrated its charge file information and documents to ARC, from Integrated Mission System (IMS) in January 2022.

II.    **Relevant ESI Sources for Defendant:**

    A.    **Unstructured Data**

        1.    **Email:** HCL's custodians of record have utilized multiple email accounts during the relevant period, which can reasonably be exported. HCL email is maintained on Microsoft Office 365 and reasonably includes domains hcl.com and hcltech.com. HCL migrated from Enterprise Vault. Emails can reasonably be exported.

        2.    **User-Created Files:** User-created files are routinely kept and maintained on Microsoft's One Drive cloud storage platform.

        3.    **Devices:**

      a.      <u>Laptops</u>: HCL's relevant custodians utilized laptops with Microsoft One Drive cloud storage capability during the relevant period.

      b.      <u>Cellular Phones</u>: HCL's relevant custodians utilized multiple iPhones and possibly Android phone during the relevant period.

**B.**    **Structured Database Systems : No relevant structured database systems.**

**Attachment 3**
**RELEVANT ESI CUSTODIANS**

I.  **Relevant Custodians for Defendant:**
1.  Geetika Kohli, Senior Manager – Sales and Leadership Hiring
2.  Hemanth Deshmukh, Global Lead – Senior Leadership Hiring – USA
3.  Binu Rajendran Chandrika, former Global Head of Medical Devices & Technology Strategic Business
4.  Sales Director Hemanth Panchatcharam who interviewed Batchu; (2)
5.  Associate Vice President Raghavendhran Ramamurthy; and
6.  Executive Vice President Partha Marella;
7.  Human Resources Personnel/Recruiters.
8.  Management employees involved with the hiring for the relevant Abbott Laboratories position.
9.  Decision-makers regarding the hiring for the relevant Abbott Laboratories
10. position.
11. Decision-makers regarding the implementation of EEO policies, practices, and recruiting and hiring procedures.

II. **Relevant Custodians for EEOC**
1.  Kenny Batchu
2.  Andrea Nunez, EEOC investigator.
3.  Christopher Green, EEOC San Francisco District Director: the EEOC disputes that Mr. Green has relevant information since his only involvement in the case arose after the EEOC issued its Determination on Mr. Batchu's charge. EEOC has designated him based on HCL's request, but does not waive its right to challenge his relevance to the case.
4.  All other EEOC staff and personnel involved in the conciliation process.